UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASHAREE DEVONA WILLIAMS,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:24-cv-00375-HBK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Doc. Nos. 11, 17) |

Lasharee Devona Williams ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 11, 17). For the reasons set forth more fully below, the Court affirms the Commissioner's decision.

## I.   JURISDICTION

Plaintiff protectively filed for supplemental security income and disability insurance

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 22).

benefits on February 20, 2018, alleging a disability onset date of February 8, 2018 in both applications. (AR 248-55). Benefits were denied initially (AR 62-91, 126-29) and upon reconsideration (AR 92-121, 131-36). Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on July 16, 2020. (AR 28-57). Plaintiff testified at the hearing and was represented by counsel. (*Id*.). The ALJ denied benefits (AR 7-27) and the Appeals Council denied review (AR 1-6).

On April 29, 2022, the United States District Court for the Central District of California granted the parties' stipulated motion for voluntary remand, and the court remanded for further administrative proceedings. (AR 914-18). On October 20, 2022, the Appeals Council vacated the ALJ's finding and remanded for further administrative proceedings including the opportunity for a new hearing. (AR 919-25). On October 19, 2023, Plaintiff appeared for an additional telephonic hearing before the ALJ. (AR 847-72). Plaintiff was represented by counsel and testified at the hearing. (*Id*.). On January 18, 2024, the ALJ issued an unfavorable decision. (AR 817-46). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 47 years old at the time of the most recent hearing. (AR 852). She graduated from high school. (AR 852). She lives with a relative, who is also her in-home caregiver. (AR 852). She has work history as a home health aide and child daycare center worker. (AR 853, 863-65). Plaintiff testified that she is not able to work because her "body is deteriorating" and she has constant pain in her tailbone, hands, and legs; and she has constant tingling, sharp pain, and numbness. (AR 854-55). She reported she can only walk to the corner and back before her legs start getting numb and she is unstable. (AR 856). She uses a walker and a cane every day. (AR 856). Plaintiff testified that she experiences depression, mood swings, frustration, anger, anxiety, and dizzy spells. (AR 857, 861). She has crying spells once a day or more. (AR 863). She reported her in-home caregiver assists her with bathing. (AR 858). She

2

testified that she has to change positions from standing to walking every ten minutes "or so," and she is able to stand or sit less than 10 minutes at a time. (AR 861-62).

### III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 8, 2018, the alleged onset date. (AR 823). At step two, the ALJ found that Plaintiff has the following severe impairments: obesity; degenerative disc disease of the lumbar spine; degenerative joint disease of the left knee; major depressive disorder; and panic disorder. (AR 823). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 825). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, but can never climb ladders, ropes, and scaffolds. She must avoid unprotected heights and dangerous moving machinery. The claimant can understand, remember, and carry out simple instructions that can be learned in 30 days or less, and can accept instructions from supervisors. She can have occasional non-collaborative interactions with coworkers, and occasional interactions with the general public.

(AR 827). At step four, the ALJ found that Plaintiff is unable to perform past relevant work. (AR 836). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including routing clerk, marking clerk, and hotel housekeeper. (AR 837) On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 8, 2018, through the date of the decision. (AR 838).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ's RFC determination is supported by substantial evidence in light of the ALJ's consideration of the medical opinion evidence;
2. Whether the ALJ properly considered Plaintiff's symptom claims; and
3. Whether the ALJ properly considered the lay witness evidence.

(Doc. No. 11 at 11-33).

## VII.   DISCUSSION

### A. RFC/Medical Opinions

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in

6

the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

As an initial matter, Plaintiff argues the ALJ erred in assessing the RFC because she improperly considered the medical opinion of Carmen Sorisho, LMFT. (Doc. No. 11 at 17). For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence

7

> and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In July 2020, Carmen Sorisho, LMFT completed a psychiatric medical source statement opining that Plaintiff has difficulty with concentration and attention when in long conversation with people; complex tasks will be a challenge to complete; she is easily overwhelmed and stressed due to anxiety and depression; she has difficulty carrying out simple instructions at times; she is unable to carry out and understand extensive instruction; she has some difficulty carrying out instructions from supervisors; and she would miss more than 15 days a month due to mental issues. (AR 816). The ALJ found Ms. Sorisho's opinion was not persuasive. (AR 835-

8

36). First, Plaintiff advances a one-sentence argument that the ALJ's consideration of Ms. Sorisho's opinion "did not comport with the regulations requiring the ALJ to base her rejection on substantial evidence finding a lack of support and consistency with the record." (Doc. No. 11 at 17). However, as to supportability, the ALJ noted Ms. Sorisho did not support her opinion by citing to objective evidence. (AR 835); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) …will be."). And as to consistency, the ALJ found (1) the opinion was not consistent with primarily normal findings on mental status examination, including that Plaintiff was alert, oriented, calm, cooperative, pleasant, respectful, and had normal memory and ability to concentrate; (2) there was no evidence of significant mental health treatment to support a finding that Plaintiff would miss work due to anxiety and depression; (3) Plaintiff reported doing well with medications and her anxiety was under control; and (4) the opinion was inconsistent with Plaintiff's activities of daily living, including driving, shopping in stores, attending church, and visiting a casino. (AR 835-36 (citing AR 308-14, 462, 467, 490, 510-12 (self-reported "happy mood"), 521, 529 ("anxiety is under control" and "no longer having depression"), 678, 719-20)); *see Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999) (ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning). Thus, the ALJ's finding that Ms. Smith's opinion was not fully persuasive is supported by substantial evidence. 20 C.F.R. § 416.920c(c)(1)-(2); *Woods*, 32 F.4th at 792.

Second, Plaintiff offers the seemingly contradictory argument that the ALJ did adopt Ms. Sorisho's opinion as to co-workers and the public "as that is the only opinion in the record that would support such a limitation, but the ALJ then simply decided to ignore the other limitations found by LMFT Sorisho." (Doc. No. 11 at 17). It is well-settled that "an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations"); *see also* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

1 However, as discussed *supra*, the ALJ properly considered Ms. Sorisho's opinion under the
2 revised regulations, and her finding that the opinion was not persuasive was supported by
3 substantial evidence. Moreover, as discussed in detail below, "the ALJ is responsible for
4 translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc.*
5 *Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). For all of these reasons, the Court finds no error
6 in the ALJ's assessment of the RFC on this basis of improper evaluation of Ms. Sorisho's
7 opinion.

8 Finally, Plaintiff argues the assessed RFC is not supported by substantial evidence
9 because the ALJ did not identify an "actual medical basis" for limiting Plaintiff to "simple
10 instructions" and "can accept instructions from supervisors." (Doc. No. 11 at 13-14). Plaintiff
11 contends that the ALJ improperly relied on her lay opinion in assessing the RFC because she
12 "rejected" all of the medical opinion evidence, and that the ALJ's summary of the medical record,
13 without further explanation, failed to support those assessed limitations. (*Id*. at 13-18) (citing,
14 e.g., *de Gutierrez v. Saul*, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020) (collecting cases
15 finding error when the ALJ assessed the RFC "without a medical opinion that defined Plaintiff's
16 limitations")). Defendant acknowledges case law cited by Plaintiff in support of this argument,
17 but nevertheless argues "the relevant inquiry is whether an ALJ's RFC finding is supported by
18 substantial evidence, not simply whether the RFC matched the limitations that a physician
19 assessed." (Doc. No. 17 at 5-6). The Court agrees.

20 Here, the ALJ provided a detailed summary of the mental health evidence, including
21 evidence that could be considered more favorable to Plaintiff, documenting depressed mood;
22 tearful, flat, or constricted affect; reported panic attacks; reported irritated mood that affects her
23 ability to concentrate and wanting to be left alone; mood swings; reported improvement with
24 medication and reports she no longer had depression; pleasant and calm mood; denials of
25 depression or anxiety; and mental status examination results finding unremarkable behavior,
26 normal thought process and thought content, normal attention and concentration, normal
27 perception, and good insight and judgment. (AR 833-34 (citing AR 509-12, 518, 523, 525, 527,
28 529, 531, 533, 535, 538, 542, 544, 558-59, 676, 680, 1175, 1179, 1183 (stating "that if she does

not feel like coming [to therapy] then she will not"), 1187, 1193-94, 1214, 1215, 1220, 1225, 1237, 1266, 1270).  As argued by Defendant, the ALJ "has the obligation to consider the evidence and determine how consistent various opinions are with the evidence, and decide the RFC accordingly.  Contrary to Plaintiff's argument that the ALJ was not qualified to consider the evidence, the ALJ was directed to make exactly this determination."  (Doc. No. 17 at 4-5 (citing 20 C.F.R. § 404.1545(a)(1) (RFC is assessed based on all the relevant evidence in the case record))); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC"); *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (noting "presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work."). Here, the ALJ summarized the medical evidence but did not "personally interpret" the results of any examinations or make independent medical findings.  *See Bufkin v. Saul*, 836 Fed. App'x 578, 579 (9th Cir. 2021) ("Contrary to [plaintiff's] argument, the ALJ did not rely on her 'lay interpretation' of medical evidence.  Rather, the ALJ simply summarized the medical evidence from [physicians]; she did not interpret any x-rays or test results directly.  ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination."); *Teresa P. v. Comm'r of Soc. Sec.*, 2025 WL 326160, at * (S.D. Cal. Jan. 29, 2025) (disagreeing with plaintiff's argument that "because the ALJ did not find the medical opinions in the record persuasive, he must have interpreted the medical data himself – improperly as a layperson – to determine the RFC," and finding no harmful error because the ALJ summarized the medical evidence and did not interpret raw medical data to determine the RFC).

Moreover, Plaintiff does not cite any well-supported functional limitations related to mental health limitations in the medical record that were not properly accounted for the in the assessed RFC.  Rather, as discussed below, the ALJ properly discounted Plaintiff symptom claims and the lay witness evidence, which notably does not include any claimed mental limitations in dealing with other people or completing simple tasks; and as discussed above, the

11

ALJ properly considered Ms. Sorisho's opinion and the state agency psychological opinions[2] under the regulations and found they were not persuasive.

For the foregoing reasons, the Court finds no error in the ALJ's consideration of the medical opinion evidence and formulation of the RFC limiting Plaintiff to "simple instructions" and "can accept instructions from supervisors." (AR 827); *see Bayliss*, 427 F.3d at 1217.

### B. Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing

---

[2] Plaintiff does not challenge the ALJ's finding that the state agency psychological consultants' opinions that she did not have a medically determinable mental impairment was not persuasive. (AR 835); *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider issues not raised with specificity in plaintiff's opening brief) *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

[evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (AR 828).

First, the ALJ found the "objective findings, diagnostic studies, treatment modalities, and the treatment record as a whole do not demonstrate that the claimant's impairments are disabling." (AR 828). Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects, but the ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Plaintiff generally argues, without citation to the record, that "beyond the conclusory statement that the objective evidence does not support the testimony, the ALJ nowhere connects any of [Plaintiff's] testimony to the ALJ's analysis," and the ALJ fails to "'identify the specific testimony' that is undermined by Plaintiff's treatment history." (Doc. No. 11 at 23-24 ((citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("providing a summary of medical evidence in support of a [RFC] finding is not the same as providing clear and convincing reasons for finding the claimant's testimony not credible")). However, the ALJ decision outlines Plaintiff's alleged symptoms from her function reports and testimony at her hearing, including limitations in lifting, standing, walking, sitting, kneeling, and completing tasks. (AR 828). Moreover, as noted by Defendant, the ALJ set out objective evidence from the medical record including, but not limited to, a July 2020 lumbar x-ray showing abnormal alignment with scoliosis and degenerative changes at the bilateral SI joint; an August 2020 MRI showing disc degeneration predominantly at the L5-S1 level, with only mild narrowing and no spinal or neural foraminal stenosis; a July 2023 MRI showing stable mild disc degeneration discopathy at L5-S1 only with otherwise normal findings, and no central canal and no foraminal impingement an any lumbar level; normal range of motion of left knee with

tenderness at the medial joint line and patellofemoral crepitus and mild effusion, but otherwise normal findings on 2018 MRI and x-rays showing only mild degenerative joint disease of the medical compartment; negative supine straight leg tests bilaterally; positive left supine straight leg test; normal gait and heel and toe walking; normal motor testing in upper and lower extremities; and mental status examinations noted mood and affect symptoms but were otherwise benign.  (AR 398-99, 402, 423, 427, 477, 645, 657, 660, 662, 706-08, 711-12, 719, 797, 801, 807, 828-34, 1122, 1127, 1132, 1138, 1148, 1150).

As part of the summary of medical evidence, the ALJ also noted Plaintiff's reports of improvement of her symptoms with medication throughout the relevant adjudicatory period, and ongoing "unwillingness to engage in treatments that could reduce her symptoms." (AR 829-34); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure); *see Warre*, 439 F.3d at 1006 (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *see* AR 456 (refused physical therapy), 525 ("feels great"), 529 (reported doing well on medication), 544 (reporting medication helps with anxiety), 594 (declined physical therapy referral), 597 (back pain well-controlled with medication), 607 (does not want surgery), 628 (declined epidural pain relief), 648 (reported no pain, "feeling better"), 659 (declined pain relief), 715 (Plaintiff "did not feel symptoms severe enough to warrant injection, 1137, 1162, 1183 (reporting improvement in symptoms and reporting to provider that she wanted to meet once a month and "if she does not feel like coming in then she will not"), 1194 (reporting medication is helping).  The lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear, convincing, and largely unchallenged reason to discount Plaintiff's symptom claims.

Second, the ALJ found Plaintiff "described activities of daily living which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (AR 834).  A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). In support of this finding, the ALJ noted Plaintiff lives alone, prepares meals, washes dishes, does laundry, vacuums, drives, shops in stores, and goes out alone. (AR 834 (citing AR 308-21, 331-39). The ALJ also specifically found that despite Plaintiff's reported limitations, she is able to attend church, go to the casino, sew and crochet. (AR 308-21, 834, 719).

Plaintiff argues (1) the "sporadic activities as described in her testimony or in this record do not contradict her testimony nor do they demonstrate an ability to spend a substantial part of the day doing activities transferable to a full-time work setting," and relatedly (2) the ALJ did not provide the requisite explanation as to how Plaintiff's daily activities undermine her symptom claims. (Doc. No. 11 at 26-29); *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination."). Here, however, the ALJ specifically noted that Plaintiff's "significant" activities of daily living were inconsistent with her allegations of disabling limitations. (AR 834). Moreover, as identified throughout the ALJ decision, Plaintiff consistently reported to providers throughout the relevant adjudicatory period that she could prepare simple meals, grocery shop for two to three hours, do light housework, drive a car, exercise by walking one or twice a week, perform "most housekeeping/job duties," stand as long as she wanted, lift heaving weights, engage in a normal social life, walk up to half a mile, travel up to two hours, and sit in her favorite chair for as long as she wanted, stand up to four hours, lift up to 15 pounds, and attend church and family events, and gamble at the casino on two separate occasions. (AR 829 (noting discrepancy between function report and reports to physicians that

15

she was "unable to cook or grocery shop because she could not stand/sit/walk for a prolonged time"), 830 (noting discrepancy between walking for exercise and simultaneously requesting a walker with a seat), 831-32 (noting discrepancy between "relatively good functional abilities" and simultaneous reports that "pain prevented her from doing even light duties), 833-34; *see also* AR 310-12, 397, 490, 607, 1162 (noting she can take care of herself and sit in her favorite chair "as long as she wants").

Thus, regardless of evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's reported ability to stand, walk, sit, and socialize, was inconsistent with the severity of her allegations of entirely disabling limitations including inability to stand or sit for more than 10 minutes and inability to walk a single block (AR 856, 861). *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *see also Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). This was a clear and convincing reason for the ALJ to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**C. Lay Witness Testimony**

Plaintiff's friend, Randolph Berry, submitted a Third-Party Function Report stating that Plaintiff was limited in standing and sitting for "too long," makes her own meals, drives, shops in stores, sews, attends church, and can walk about 200 feet before she needs to rest. (AR 331-37). The ALJ "reviewed and considered" these statements and noted Mr. Berry's report was generally supportive of and consistent with Plaintiff's allegations. (AR 836). However, the ALJ found that as Mr. Berry is a nonmedical source, the ALJ "is not required to articulate how such evidence was considered." (*Id*. (citing 20 C.F.R. § 404.1520c(d), 416.920c(d)).

Plaintiff argues that the cited regulation "does not say [] that an ALJ is absolved from

articulating how the nonmedical evidence was considered; only that the medical criteria does not apply." (Doc. No. 11 at 31 (citing *Carrier v. Kijakazi*, 2023 WL 8016706, at *3 (9th Cir. Nov. 20, 2023)). Thus, Plaintiff contends the ALJ erred by failing to provide the requisite explanation for how she considered Mr. Berry's testimony. (*Id*. at 31-32). Defendant correctly notes that ALJ did not "ignore" Mr. Berry's testimony; rather, the ALJ considered and found it was consistent with Plaintiff's allegations. (Doc. No. 17 at 16). Moreover, the Ninth Circuit has continued to hold that where, as here, the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also sufficient to reject the lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *Johnson v. Kijakazi*, 2022 WL 3998572, at *2 (finding ALJ's failure to address lay witness testimony harmless where the lay witness statements were "largely duplicative" of plaintiff's testimony).

Irrespective of these arguments, the Ninth Circuit recently clarified that

> [u]nder the new regulations, nonmedical sources—including lay testimony from friends and family—are still considered in determining the "consistency" of "medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c)(2); *see id.* § 404.1502(e) (defining "nonmedical source"). But the regulation provides that ALJs "are not required to articulate how [they] considered evidence from nonmedical sources." *Id.* § 404.1520c(d). These regulations apply to claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).
>
> Given this new provision, our "germane reasons" precedent is no longer "in accord" with Social Security regulations. Although our precedent demands explanation for the rejection of each lay witness's testimony, **the governing regulations now expressly allow ALJs to discount nonmedical evidence without explanation**. *See Molina*, 674 F.3d at 1114 (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." (simplified)).

*Hudnall v. Dudek*, -- F.4th --, 2025 WL 729701, *2-3 (9th Cir. Mar. 7, 2025) (emphasis added). Here, the ALJ properly noted she considered Mr. Berry's testimony as a nonmedical source, and she was not required to explain how the evidence was considered. (AR 836). Thus, the Court finds no error in the ALJ's consideration of the lay witness testimony.

## VIII. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered the medical opinion evidence, Plaintiff's symptom claims, and the lay witness testimony, and properly assessed the RFC. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 17) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:   March 25, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE